IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | | |
|---|---|---|
| TIMOTHY S. BAILEY and CHRISTINE C. BAILEY, | ) ) ) | |
| Plaintiffs, | ) ) | No. 9:21-cv-04123-DCN |
| vs. | ) ) | **ORDER** |
| TERRY A. FINGER; THOMAS L. BROOKS; and FINGER, MELNICK, BROOKS & LABRUCE, P.A., | ) ) ) ) | |
| Defendants. | ) ) ) | |

The following matter is before the court on defendants Thomas L. Brooks ("Brooks"), Terry A. Finger ("Finger"), and Finger, Melnick, Brooks & LaBruce, P.A.'s (the "law firm") (collectively, "defendants") motion for partial summary judgment. ECF No. 34. For the reasons set forth below, the court grants the motion.

## I. BACKGROUND

This matter arises out of the sale of Timothy S. Bailey and Christine C. Bailey's (the "Baileys") primary home. Defendants are lawyers who represented the Baileys in the sale of their primary residence located at 68 Lexington Drive, Bluffton, South Carolina (the "Residence"). On or around March 11, 2021, and after the contract to sell the Residence had been executed, Hallmark Marketing Company, LLC ("Hallmark"), as a judgment creditor, sought to domesticate a foreign judgment against the Baileys in the amount of $2,162,598.17. Hallmark had previously secured the judgment in a state court case in Jackson County, Missouri. According to the Baileys, defendants began exchanging offers with Hallmark "without the knowledge or consent of the [Baileys]."

1

ECF No. 1, Compl. ¶ 28.  Ultimately, defendants secured a $100,000 homestead exemption for the Baileys, but the Baileys claim they were entitled to $126,475 under South Carolina law.  Additionally, under the terms of the agreement with Hallmark, the amount paid to Hallmark served as partial satisfaction of the judgment, rather than full satisfaction.  The Baileys allege that they would not have agreed to sell the Residence had they known of either condition.

On December 22, 2021, the Baileys filed the instant action against defendants, asserting claims for legal malpractice and for violation of the South Carolina Unfair Trade Practices Act (the "SCUTPA"), S.C. Code Ann. § 39-5-10, et seq.  Compl.  On May 1, 2023, defendants filed a motion for partial summary judgment on the SCUTPA claim.  ECF No. 34.  The Baileys responded in opposition on May 15, 2023, ECF No. 36, to which defendants replied on May 17, 2023, ECF No. 39.  As such, the motion has been fully briefed and is now ripe for review.

## II.  STANDARD

Summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248.  "[S]ummary

judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. The court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor. Id. at 255.

Although the court must draw all justifiable inferences in favor of the nonmoving party, the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence. See Anderson, 477 U.S. at 252; Stone v. Liberty Mut. Ins. Co., 105 F.3d 188, 191 (4th Cir. 1997). Rather, "a party opposing a properly supported motion for summary judgment . . . must 'set forth specific facts showing that there is a genuine issue for trial.'" Bouchat v. Balt. Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed. R. Civ. P. 56(e) (2002) (amended 2010)). If the adverse party fails to provide evidence establishing that the factfinder could reasonably decide in his favor, then summary judgment shall be entered "regardless of '[a]ny proof or evidentiary requirements imposed by the substantive law.'" Id. (quoting Anderson, 477 U.S. at 248).

### III.   DISCUSSION

Defendants bring this motion to argue that "there is no genuine dispute that Defendants did not violate [SCUTPA]," and thus they are entitled to judgment as a matter of law as to that cause of action. ECF No. 34 at 1. Specifically, defendants argue that the Baileys "have failed to establish any element of [SCUTPA]." Id. at 4. SCUTPA provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in

3

the conduct of any trade or commerce are hereby declared unlawful." S.C. Code Ann. § 29-5-20(a) (1985). To bring a successful SCUTPA claim, "the plaintiff must show: (1) the defendant engaged in an unfair or deceptive act in the conduct of trade or commerce; (2) the unfair or deceptive act affected public interest; and (3) the plaintiff suffered monetary or property loss as a result of the defendant's unfair or deceptive act(s)." Wright v. Craft, 640 S.E.2d 486, 498 (S.C. Ct. App. 2006). The court finds that the Baileys have not presented a genuine dispute of material fact to meet the second requirement.

A plaintiff may show that unfair or deceptive acts or practices have an impact upon the public interest by demonstrating a potential for repetition. Haley Nursery Co. v. Forrest, 381 S.E.2d 906, 908 (S.C. 1989); Noack Enters., Inc. v. Country Corner Interiors of Hilton Head Island, Inc., 351 S.E.2d 347, 350–51 (S.C. Ct. App. 1986). The potential for repetition is generally demonstrated in one of two ways: "(1) by showing the same kind of actions occurred in the past, thus making it likely they will continue to occur absent deterrence; or (2) by showing the company's procedures create a potential for repetition of the unfair and deceptive acts." Wright, 640 S.E.2d at 502. However, "the plaintiff in a SCUTPA action is required only to allege and prove those facts sufficient to demonstrate potential for repetition; at that point, plaintiff has proven an adverse effect on the public interest sufficient to recover under the SCUTPA." Liberty Mut. Ins. Co. v. Emp. Res. Mgmt., Inc., 176 F. Supp. 2d 510, 516 (D.S.C. 2001). SCUTPA relief is "not available to redress a private wrong where the public interest is unaffected." Columbia E. Assocs. v. Bi-Lo, Inc., 386 S.E.2d 259, 263 (S.C. Ct. App. 1989); see also Noack Enters., 351 S.E.2d at 349–50. Even "a deliberate or intentional breach of a valid contract,

without more, does not constitute a violation of [SCUTPA]." Id. "Otherwise every intentional breach of contract within a commercial setting would constitute an unfair trade practice and thereby subject the breaching party to treble damages." Ardis v. Cox, 431 S.E.2d 267, 271 (S.C. Ct. App. 1993).

Defendants argue that the Baileys have presented no evidence to support their contention that the defendants' conduct affected anyone in the public or that it is capable of being repeated. ECF No. 34 at 7. Rather, the alleged wrong is "purely private." Id. at 8. Additionally, defendants argue that the Baileys "have not demonstrated or even attempted to demonstrate beyond their Complaint that Defendants acted similarly in the past." Id. at 9. Presumably, defendants reference the Baileys' statement in the complaint that "Defendants unfair and deceptive acts and promises affect the public interests," and "have either been repeated of [sic] have the potential for repetition." Compl. ¶¶ 49–50.

The Baileys do not identify either that the alleged deceptive acts have previously occurred, nor do they point to a company policy that creates the potential for repetition. See Wright, 640 S.E.2d at 502. At most, they challenge the law firm's advertisements, which purportedly attest to the law firm's competence despite its incompetence—however, such a contention constitutes a triable issue that must be evaluated under the legal malpractice claim.[1] Without more, the court finds that the Baileys have failed to prove the second requirement of a SCUTPA claim: that the act affected the public

---

[1] In their response in opposition, the Baileys emphasize that "the public's interest/trust in attorneys in [sic] paramount to the profession," which is not the appropriate test for that prong and the court instead provides its analysis based upon the facts in the complaint and the appropriate test to demonstrate the impact on the public interest. See ECF No. 36 at 3.

interest.[2]  As many courts have held, reliance solely on mere allegations in the complaint without further evidentiary support is insufficient to state a SCUTPA claim.  See, e.g., Skywaves I Corp. v. Branch Banking & Tr. Co., 814 S.E.2d 643, 655–56 (S.C. Ct. App. 2018) (granting summary judgment on the SCUTPA claim because the plaintiff provided no evidence that the defendant had engaged in violations in the past nor that the institutional procedures of advising customers created a potential for repetition); Woodson v. DLI Props., LLC, 753 S.E.2d 428, 435 (S.C. 2014) (same); In re Hughes, 627 B.R. 327, 338 (Bankr. D.S.C. 2021) (same); Ardis, 431 S.E.2d at 271 (same).

Moreover, the law firm has presented evidence from the real estate agent and from their expert witness to show that this type of transaction was incredibly rare to begin, such that this particular act, even if deceptive, could not have been repeated.  See ECF No. 34 (citing ECF No. 34-1; ECF No. 34-7).  The Baileys have not provided any evidence to the contrary—at most, they included defendants' representation/engagement letter which neither directly implicates the public interest nor rebuts the defendants' claim that such a transaction is incredibly rare.  See ECF No. 36-1.  Thus, the Baileys have failed to present any evidence demonstrating that the alleged act affected the public interest, meaning they have not met the second element of a SCUTPA claim.  The court need not reach the first and third prongs because dismissal is warranted on the second

---

[2] The Baileys attach two exhibits to serve as evidence of their claim but neither one supports the required second prong of a SCUTPA claim; namely, that the unfair or deceptive act affected the public interest.  See ECF No. 36-1 (Representation/engagement letter); ECF No. 36-2 (Affidavit from expert witness with expertise in legal ethics with an emphasis on real estate transactions).  Moreover, the exhibit that the Baileys argue is most on point, ECF No. 36-1, does not explicitly state that the law firm has expertise clearing unusual title problems, but rather gives that work as an example of an occasion where the attorney fee could increase should additional work be needed to close the real estate transaction.

prong alone. However, even if the court were to evaluate the first and third prongs, they too counsel towards granting the motion.

On the first prong, the Baileys argue that they have identified an unfair or deceptive act—namely, improper advertisements in violation of Rule 7.1 (presumably of the South Carolina Rules of Professional Conduct ("SCRPC")).[3] ECF No. 36 at 2. But it is unclear whether a violation of Rule 7.1 rises to the level of deception to meet the first prong of a SCUTPA claim—neither party has identified any cases to provide guidance on that issue. The court has found only one case that implicates both a purported violation of the SCRPC and SCUTPA. See, e.g., Gibson v. Epting, 827 S.E.2d 178 (S.C. Ct. App. 2019). But in Gibson, the court found that a violation of the SCRPC does not in itself constitute legal malpractice because "the rules are intended for guidance and disciplinary purposes, not to form the basis for civil litigation." Id. at 182 (quoting Spence v. Wingate, 716 S.E.2d 920, 927 (S.C. 2011)). That court went on to explicitly note that "[t]he ethical rules were not designed to be weaponized for the use of private litigants." Id. Thus, Gibson counsels against finding that a violation of Rule 7.1, without more, meets the first prong of a SCUTPA claim. As such, even if the court were to reach the first prong, it would find that the unfair or deceptive act alleged by the Baileys does not meet the threshold requirement for a SCUTPA claim as a matter of law.

---

[3] The complaint alleges that defendants violated SCUTPA by engaging in unfair methods of competition and unfair and deceptive acts and practices in the conduct of their trade. Compl. ¶ 47. In particular, the Baileys emphasize that defendants, and the law firm in particular, "advertise and expressly 'boasts [sic] a roster of talented and highly skilled legal professionals" that among its expertise is residential real estate transactions where they offer 'top-notch' service with a 'Client come first approach' and has deceptively failed to perform as promised/required." Id. ¶ 48.

The third prong of a SCUTPA action brought by a citizen under section 39-5-140(a) of the South Carolina Code requires that the person suffer an "ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice." State ex rel. Wilson v. Ortho-McNeil-Janssen Pharms., Inc., 777 S.E.2d 176, 189 (S.C. 2015) (quoting S.C. Code § 39-5-140(a)). In other words, SCUTPA requires that a private claimant suffer an actual loss, injury, or damage, and requires a causal connection between the injury-in-fact and the complained of unfair or deceptive acts or practices. Id. (citing S.C. Code Ann. § 39-5-140(a)). Under the third prong, the Baileys seek to recover three categories of specific damages: an amount for failing to obtain the correct homestead exemption, an amount for failing to protect the remaining equity in the Bailey's primary residence, and an amount for failing to fully satisfy the domesticated foreign judgment, each damage which is purportedly traceable to the defendants' legal incompetence. ECF No. 36 at 4. However, those damages stem from the actions alleged in the Baileys' legal malpractice claim.[4] The Baileys have not presented evidence that creates a genuine dispute over whether their reliance on defendants' misleading advertisements—which constitute the deceptive act

---

[4] Indeed, the SCUTPA claim is duplicative of the legal malpractice claim because all claims underlying the SCUTPA claim arise from actions taken during the scope of legal representation and that will be more fully tried during the legal malpractice claim. See David v. Savage, 2020 WL 12618896, at *5–6 (D.S.C. July 6, 2020) (dismissing the claims of breach of contract, fraud and negligent misrepresentation, civil theft/conversion, civil conspiracy, and statutory claims of SCUTPA and RICO as duplicative of the legal malpractice claim). Thus, the granting of partial summary judgment on the SCUTPA claim still allows the legal malpractice claim to proceed on its merits.

under this SCUTPA claim—resulted in said damages.[5]  See ECF No. 34 at 10.  Without more, the court finds that the Baileys have failed to meet the third prong.

Thus, the court notes that its analysis of the first and third prongs guides the court towards the same conclusion it reached on the second prong: granting the partial motion for summary judgment for failure to state a claim for relief.

### IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS** the motion for partial summary judgment.

**AND IT IS SO ORDERED.**

                       **DAVID C. NORTON**
                       **UNITED STATES DISTRICT JUDGE**

**June 5, 2023
Charleston, South Carolina**

---

[5] The court reiterates that the Baileys have provided only two exhibits in their response in opposition to the motion for summary judgment.  ECF Nos. 36-1, 36-2.  These exhibits are clearly relevant to the legal malpractice claim—the representation/engagement letter shows the relationship between the parties and the expert witness report emphasizes that defendants may have breached the requisite duty of care standard.  ECF No. 36-2 at 4.  But neither exhibit clearly shows that the Baileys relied upon the defendants' representations and advertisements to choose the law firm as their representative in the legal transaction, nor have the Baileys presented the court with sworn affidavits saying as much.  Thus, without more, the causal chain is not clearly established.